# EXHIBIT A

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
No. 20-4252

ROBERTA LINDENBAUM,

*Plaintiff-Appellant,*

v.

REALGY, LLC, et al.,

*Defendants-Appellees.*

APPEAL FROM UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO, EASTERN DIVISION
CIVIL ACTION NO. 1:19-CV-2862

**APPELLEE'S MOTION SEEKING RECUSAL OF JUDGE JANE
BRANSTETTER STRANCH**

Ryan D. Watstein
Matthew A. Keilson
**KABAT CHAPMAN & OZMER LLP**
171 17th St. NW, Suite 1550
Atlanta, Georgia 30363
Phone: (404) 400-7307
E-mail: rwatstein@kcozlaw.com
E-mail: mkeilson@kcozlaw.com

Paul A. Grammatico
**KABAT CHAPMAN & OZMER LLP**
333 S. Grand Ave., Suite 2225
Los Angeles, California 9007
Phone: (213) 493-3988
E-mail: pgrammatico@kcozlaw.com

**COUNSEL FOR APPELLEE**

1

## I.     INTRODUCTION

Judge Stranch should recuse herself from this Appeal pursuant to 28 U.S.C. § 455(a) because she and close family members would directly benefit from a reversal of the District Court, a circumstance that requires recusal. Judge Stranch's husband and son are partners (and her daughter is an attorney) in a law firm—Branstetter Stranch—that currently represents plaintiffs, including within the Sixth Circuit, seeking to impose class-action liability under the TCPA's Robocall Restriction (47 U.S.C. § 227(b)(1)(A)(iii)). Appellee here lodges a constitutional challenge that would render the Robocall Restriction unenforceable for at least a five-year period.[1] A ruling in Appellee's favor would impact current Branstetter Stranch litigation, as well as future TCPA cases they may take, which the firm is actively and currently soliciting via its website. In rare circumstances like these, where a judge's impartiality might reasonably be questioned by a layperson observer, disqualification is mandatory. *Liteky v. United States*, 510 U.S. 540, 548 (1994).

---

[1]     Because it is not clear when the statute ceased to discriminate on the basis of content, the period of unenforceability could extend beyond five years. *See Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335, n.12 (2020) (plurality opinion) (suggesting severance would not be effective until "entry of final judgment by the District Court on remand in this case," an event that has yet to occur).

2

To be clear, Appellee does not seek recusal here because a judge's distant relatives work at a firm that dabbles in the type of legal work at issue in an appeal—which would be inappropriate. Appellee seeks recusal because a judge's spouse and two children all work for a firm bearing her name, based primarily in the Sixth Circuit where this Court's ruling will be binding, that is currently handling and is actively advertising for litigation under a very specific statutory sub-section—litigation that could be fully or partially extinguished by a ruling in Appellee's favor. Under these unique circumstances, where the constitutional issue raised in this Appeal has implications extending beyond this particular case, and the Court's decision will impact claims under the Robocall Restriction for at least a five-year period, recusal is required by the plain language of 28 U.S.C. § 455(a).

## II.    RELEVANT FACTS

### A.    Branstetter Stranch & Jennings PLCC.

James G. Stranch, III, Judge Stranch's husband, is a member of Branstetter Stranch & Jennings PLLC ("Branstetter Stranch"). J. Gerard Stranch IV, Judge Stranch's son, is the firm's managing partner. K. Grace Stranch, Judge Stranch's daughter, also practices at the firm.[2] Judge Stranch also practiced exclusively at the

---

[2]    All relevant information pertaining to Branstetter Stranch is available on the firm's website, including primarily the "Our Attorneys" and "Practice Areas" sections of its web site. *See* https://www.bsjfirm.com/our-attorneys/ (last visited 8/17/21).

3

firm prior to being appointed to the federal bench, and her father, Cecil Branstetter, is the firm's founder.[3] The name of the firm ("Branstetter Stranch") bears Judge Stranch's maiden and married names.

The firm is primarily located in the Sixth Circuit, with offices in Nashville, Louisville, and Cincinnati. It advertises its plaintiffs-side TCPA class action results on its web site, noting prominently that it has achieved "multi-million dollar settlements" in TCPA matters, which presumably resulted in significant payouts to the firm's partnership.[4] A search on PACER reveals that the firm has filed at least four TCPA class actions since January 1, 2016 involving liability for calls under the Robocall Restriction specifically, which Appellee challenges here. *See* Exhibit A (compiling the four complaints).[5]

Two of these cases, *Olsen v. Desert Lake Group, LLC*, No. 4:20-cv-00165-BSM (E.D. Ark. Oct. 16, 2020), and *Elrod v. No Tax 4 Nash*, No. 3:20-cv-00617 (Mid. D. Ten. July 17, 2020) are currently pending, and *Elrod* is within the Sixth Circuit. In both cases, the plaintiffs are seeking class-wide damages up to $1,500

---

[3]   Judge Stranch's Questionnaire for Judicial Nominees. *See* https://www.judiciary.senate.gov/imo/media/doc/JaneStranch-PublicQuestionnaire.pdf   (last visited 8/17/21).

[4]   *See*   https://www.bsjfirm.com/practice-areas/consumer-protection/   (last visited 8/17/21).

[5]   This was revealed by a cursory federal search; this list is unlikely to be exhaustive.

per violation based on violations of the Robocall Restriction that Appellee argues was unconstitutional and unenforceable from 2015 until at least the Supreme Court's decision in *AAPC* and potentially longer.

In *Olsen*, the TCPA class-action liability sought by Branstetter Stranch is in excess of $5 million. That case would be substantially narrowed, if not eliminated, by adoption of the constitutional argument Appellee makes in this appeal. This is true because one of the classes is premised on violations of the Robocall Restriction that took place from October 16, 2016 through October 16, 2020. *See* Ex. A, *Olsen* Complaint, pp. 12 -14 (describing class consisting of text messages in alleged violation of the Robocall Restriction).[6] Thus, if Realgy is correct that the Robocall Restriction is unenforceable from 2015 to at least 2020, the great majority of the putative class's claims would be extinguished, including the claim of the representative plaintiff.[7] Similarly, in *Elrod*, the class consisting of alleged Robocall Restriction violations could also be entirely eliminated, depending on whether and

---

[6]    It is not uncommon for TCPA class action liability to reach millions of dollars, based on the statutory penalties. *See, e.g., Wakefield v. Visalus, Inc.*, No. 3:15-cv-1857-SI, Dkt. 377 (D. Or. Aug. 14, 2020) (holding $925,220,000.00 judgment did not violate due process); *McMillion, et al. v. Rash Curtis & Assoc.*, No. 4:16-CV-03396-YGR, Dkt. 430 (N.D. Cal. May 4, 2020) (judgment awarding class damages for TCPA violations in amount of $267,349,000).

[7]    Although *Olsen* is pending in the 8th Circuit and the Court's decision will not bind it, the Court's decision here will be the first time a Circuit court has addressed Appellee's constitutional argument and it will be persuasive authority.

5

to what extent this Court determines that the Robocall Restriction is unenforceable. Given that the TCPA's statute of limitations is four years, any future TCPA class actions Branstetter Stranch brings under the Robocall Restriction will be similarly impacted for years to come.

### B.    Timing of this Motion.

Appellee learned of the makeup of the appellate panel in this Appeal on July 12, 2021, barely more than a month ago. *See* attached Dec. of R. Watstein, ¶ 3, beginning on p. 14 of this Motion. That was 17 days prior to the oral argument, during the time Appellee was making its final preparations for oral argument. *Id.* Appellee's Counsel did not become aware of the extensive involvement of Judge Stranch's family's law firm in TCPA class action litigation involving the Robocall Restriction until it discovered it in a search after oral argument on or about August 1, 2021. *Id.*, ¶ 4.[8] Once Appellee's Counsel became aware of this information, it proceeded with an intensive intra-firm review process to assess the applicable law and carefully consider whether it was appropriate to seek recusal under these circumstances. *Id.*, ¶ 5. Appellee brought this Motion as soon as possible after concluding that intra-firm review and determining, after respectful and careful

---

[8]    Neither KCO nor undersigned counsel has filed a recusal motion before. *Id.*, ¶ 6. There was no basis to investigate filing one at the time the panel was assigned, considering that the recusal statute is designed to be self-executing.

consideration, that recusal is required under the unique circumstances of this Appeal by the plain language of the applicable statute. *Id.*, ¶ 7.

## III.   LEGAL STANDARD

A federal judge "shall disqualify [her]self in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988). Because the purpose of the rule is to avoid the *appearance* of impropriety, the "standard … is objective. It asks what a reasonable person knowing all the relevant facts would think about the impartiality of the judge." *Roberts v. Bailar*, 625 F.2d 125, 129 (6th Cir. 1980); *see also Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 & n.12 (11th Cir. 1988) (emphasizing the test is whether a "lay observer," and not one "trained in the law," would reasonably question the judge's impartiality); *Feminist Women's Health Ctr v. Codispoti*, 69 F.3d 399, 400 (9th Cir. 1995) (disqualification "is to be judged objectively as a reasonable person with knowledge of all the facts would judge").

Under this standard, if the disqualification question is close, the judge "whose impartiality might reasonably be questioned must recuse" from hearing the appeal. *See Roberts*, 625 F.2d at 129; *see also Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 886 (2009) (citing *In re Murchison*, 349 U.S. 133, 136 (1955), for the

7

proposition that "[d]ue process 'may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties.'"). Thus, 455(a) "clearly mandates ... a judge err on the side of caution and disqualify himself in a questionable case." *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1112 (5th Cir. 1980).

## IV.   ARGUMENT

### A.   Judge Stranch Should Recuse Herself from Further Participation in this Appeal.

Judge Stranch is required to recuse herself from further involvement in this Appeal because her family's law firm is involved in active and continuing litigation and solicitation of TCPA class actions under the specific statutory provision at issue in this Appeal, including within the Sixth Circuit, and would thus benefit directly from a reversal of the District Court. On this basis, Judge Stranch's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). In particular, the following facts lead to this conclusion:

- Branstetter Stranch has handled and is currently handling significant and lucrative class action litigation involving the TCPA's Robocall Restriction, including advertising on its web site multi-million-dollar TCPA judgments;

- Branstetter Stranch is actively soliciting TCPA claims by advertising its prior success in this area on its website;

8

- Branstetter Stranch is located primarily in the Sixth Circuit, and the decision of this panel will be binding there, where the firm has active TCPA litigation under the Robocall Restriction;

- Judge Stranch's husband and son currently have ownership interests in Branstetter Stranch, and her daughter currently practices at the firm;

- Judge's Stranch's father, Cecil Branstetter, was the founder of Branstetter Stranch, Judge Stranch formerly worked there, and the firm continues to bear her name, compounding the appearance of impropriety;

- Judge Stranch's husband and son stand to benefit, both in pending and future cases, from Circuit courts rejecting the argument Appellee makes here—that the Robocall Restriction is unenforceable for the period for which it discriminated on the basis of content (from 2015 until at least the Supreme Court's decision in *AAPC*).

The law is clear that disqualification is required "'if a reasonable person who knew the circumstances would question the judge's impartiality, even though no actual bias or prejudice has been shown.'" *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 664 (8th Cir. 2003). And, the Supreme Court has mandated recusal where an appellate judge has a direct, personal, or substantial connection to the outcome of the case. *See, e.g., In re Murchison*, 349 U.S. 133, 136 (1955) ("no man is permitted

9

to try cases where he has an interest in the outcome"); *Tumey v. Ohio*, 273 U.S. 510, 523 (1927) (concluding that judges should not preside over cases where they have a "direct, substantial pecuniary interest" in the outcome). Here, this panel will be issuing a binding ruling on a constitutional issue that will impact cases Judge Stranch's family firm (which practices primarily in this Circuit) is currently both prosecuting and soliciting for, in an area that has netted millions in past payouts for Branstetter Stranch clients. Thus, there is no question that Judge Stranch's impartiality might be reasonably questioned by a layperson observer—and this *requires* recusal. That is true regardless of whether impartiality actually exists.

An analogy to another section of the recusal statute is illustrative. 28 U.S.C. § 455(b) identifies particular scenarios in which a judge "shall … disqualify [her]self," which include when "[she] knows that … [her] spouse … has a financial interest in the subject matter in controversy … that could be substantially affected by the outcome of the proceeding." Based on the plain language of this provision, a judge is required to recuse herself from a case in which her husband owns a stock interest in one of the parties, however small. *See Union Carbide Corp. v. U.S. Cutting Service, Inc.*, 782 F.2d 710, 714 (7th Cir. 1986) ("Although the prohibition results in recusal in cases where the interest is too small to sway even the most mercenary judge, occasional silly results may be an acceptable price to pay for a rule that both

10

is straightforward in application and spares the judge from having to make decisions under an uncertain standard apt to be misunderstood.").

If a judge must recuse herself because her spouse owned a nominal amount of stock in one of the parties, then surely she must also recuse herself under the circumstances here, where the financial impact of a ruling in Appellee's favor would be much more significant, immediate, and far-reaching to a judge's spouse (and thus the judge herself). The appearance of impropriety, rather than any actual impropriety, mandates recusal.

### B.    This Motion is Timely.

"Recusal motions should normally be made 'at the earliest possible moment after obtaining knowledge of the facts demonstrating the basis for such a claim.'" *In re Nat. Prescription Opiate Lit.*, No. 19-3935, 2019 WL 7482137, at *1 (6th Cir. 2019) (quoting *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987)). Here, Appellee did not discover the underlying facts for the motion until August 1, 2021. It thereafter brought the motion as soon as it was possible to do so after that— which was not until the issue had been thoroughly researched and carefully considered by the undersigned's firm.

## V.    CONCLUSION

Judge Stranch's husband and son have ownership interests in a law firm based in the Sixth Circuit, bearing Judge Stranch's family name, that is engaged in current

11

and ongoing TCPA litigation, including in the Sixth Circuit, under a specific sub-section that would be undercut by a constitutional ruling in favor of Appellee here. Branstetter Stranch is also actively advertising for future TCPA class action litigation that would also be impacted by a ruling in Appellee's favor. All such cases, and thus Branstetter Stranch and Judge Stranch herself, would benefit from reversal of the District Court. These facts require recusal under 28 U.S.C. § 455(a). Thus, Appellee respectfully requests that Judge Stranch recuse herself from further involvement in this appeal.

Dated: August 17, 2021                    Respectfully submitted,

                                          */s/ Ryan D. Watstein*
                                          Ryan D. Watstein
                                          Matthew A. Keilson
                                          **KABAT CHAPMAN & OZMER LLP**
                                          171 17th St. NW, Suite 1550
                                          Atlanta, Georgia 30363
                                          Phone: (404) 400-7307
                                          E-mail: rwatstein@kcozlaw.com
                                          E-mail: mkeilson@kcozlaw.com

                                          Paul A. Grammatico
                                          **KABAT CHAPMAN & OZMER LLP**
                                          333 S. Grand Ave., Suite 2225
                                          Los Angeles, California 90071
                                          Phone: (213) 493-3988
                                          Email pgrammatico@kcozlaw.com

## DECLARATION OF RYAN WATSTEIN IN SUPPORT OF
## MOTION SEEKING RECUSAL

The undersigned hereby declares as follows:

1.    My name is Ryan Watstein. I am a partner at Kabat Chapman & Ozmer LLP ("KCO") and lead counsel for Appellee in this Appeal.

2.    The information contained herein is based upon my personal knowledge.

3.    Appellee was notified of the appellate panel for this Appeal on July 12, 2021, which was 17 days prior to the oral argument. During that period of time, I and my co-counsel were making our final preparations for oral argument.

4.    KCO did not become aware of the extensive involvement of Judge Stranch's family's law firm in TCPA class action litigation involving the Robocall Restriction until we discovered it after oral argument on or about August 1, 2021.

5.    Once we became aware of this information, we proceeded with an intensive intra-firm review process in order to assess the applicable law and carefully consider whether it was appropriate to seek recusal under these circumstances.

6.    Neither KCO nor the undersigned has ever before filed a recusal motion and we would not make such a motion without thorough and intensive consideration.

7.    KCO filed this motion as soon as possible after concluding that intra-firm review and determining, after respectful and careful consideration, that recusal is appropriate here.

I declare under penalty of perjury that the foregoing Declaration and the facts stated in it are true and correct.

Dated: August 17, 2021                          /s/ *Ryan D. Watstein*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Motion complies with the type-volume limitation provided in Fed. R. App. P. 32(a)(7)(B). The foregoing Motion contains 2,436 words of Times New Roman (14 point) proportional type. The word processing software used to prepare this Brief was Microsoft Word 2016.

_/s/ Ryan D. Watstein_
Ryan D. Watstein
COUNSEL FOR APPELLEE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 17, 2021, I electronically filed the foregoing

Motion with the clerk of the court by using the CM/ECF System, which will

automatically generate and send by email a Notice of Docket Activity to all

registered attorneys participating in this case, and this Notice of Docket Activity will

constitute service on those registered attorneys as provided in Sixth Circuit Rule 10.1

*/s/ Ryan D. Watstein*
Ryan D. Watstein
COUNSEL FOR APPELLEE

# Exhibit A

## _3:20cv617, Elrod Et Al V. No Tax 4 Nash Et Al_

US District Court Docket

United States District Court, Tennessee Middle

(Nashville)

**This case was retrieved on 08/09/2020**

## Header

**Case Number:** 3:20cv617
**Date Filed:** 07/17/2020
**Assigned To:** District Judge Eli J. Richardson
**Referred To:** Magistrate Judge Barbara D. Holmes
**Nature of Suit:** _Telephone Consumer Protection Act_ (485)
**Cause:** Restrictions of Use of _Telephone_ Equipment
**Lead Docket:** None
**Other Docket:** None
**Jurisdiction:** Federal Question

**Class Code:** Open
**Statute:** 47:227
**Jury Demand:** Plaintiff
**Demand Amount:** $0
**NOS Description:** _Telephone Consumer Protection Act_

## Litigants

Rachael Anne Elrod
**Plaintiff**

Andrew Kaufman
**Plaintiff**

## Attorneys

Anthony A. Orlandi
ATTORNEY TO BE NOTICED
_Branstetter, Stranch & Jennings_, PLLC
223 Rosa L. Parks Avenue Suite 200
Nashville, TN 37203
USA
(615) 254-8801    Fax: (615) 255-5419
Email:Aorlandi@bsjfirm.Com

Joey P. Leniski , Jr.
ATTORNEY TO BE NOTICED
_Branstetter, Stranch & Jennings_, PLLC
223 Rosa L. Parks Avenue Suite 200
Nashville, TN 37203
USA
(615) 254-8801    Email:Joeyl@bsjfirm.Com

John Tate Spragens
ATTORNEY TO BE NOTICED
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
USA
(615) 983-8900    Fax: (615) 682-8533
Email:John@spragenslaw.Com

Anthony A. Orlandi
ATTORNEY TO BE NOTICED
_Branstetter, Stranch & Jennings_, PLLC
223 Rosa L. Parks Avenue Suite 200
Nashville, TN 37203
USA
(615) 254-8801    Fax: (615) 255-5419
Email:Aorlandi@bsjfirm.Com

RYAN WATSTEIN

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| **RACHAEL ANNE ELROD, ANDREW KAUFMAN, and SARAH MARTIN, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**NO TAX 4 NASH, JIM ROBERTS, MICHELLE FOREMAN, KIMBERLY EDWARDS, and JOHN DOES 1-10,**<br><br>**Defendants.** | **No. _____**<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

### COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO 47 U.S.C. § 227 *ET SEQ.* (TELEPHONE CONSUMER PROTECTION ACT)

Plaintiffs Rachael Anne Elrod, Andrew Kaufman, and Sarah Martin, individually and on behalf of all others similarly situated, allege on personal knowledge, investigation of counsel, and on information and belief as follows:

### NATURE OF ACTION

1.      This case involves activities conducted by a group identified as "No Tax 4 Nash" (or "NoTax4Nash") which is believed to be controlled by Defendants Jim Roberts, Michelle Foreman, Kimberly Edwards, and other persons and/or entities whose identities are presently unknown to Plaintiffs ("John Does 1-10"), specifically the contacting of individuals through the use of prerecorded messages and automated calls in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, and the Federal Communication Commission ("FCC" or "Commission") rules promulgated thereunder, 47 C.F.R. § 64.1200 (hereinafter referred to as the "TCPA").

2.      "No Tax 4 Nash" has violated the TCPA by making calls to Plaintiffs and Class Members using an "automatic telephone dialing system" and an "artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1), without Plaintiffs' and Class Members' prior express consent within the meaning of the TCPA.

3.      Plaintiffs bring this action for injunctive relief and statutory damages, all arising from the illegal activities of "No Tax 4 Nash" and all Co-Defendants.

## JURISDICTION AND VENUE

4.      This matter in controversy exceeds $5,000,000, as each member of the proposed Class of thousands is entitled to up to $3,000.00 in statutory damages for each call that violated the TCPA, since the calls at issue violated the TCPA in two ways.  Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  Further, Plaintiffs allege a national class, which will result in at least one Class member belonging to a different state.  Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

5.      This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

6.      This Court has personal jurisdiction over Defendants because each individual Defendant is a resident of the State of Tennessee for purposes of personal jurisdiction, and Defendant No Tax 4 Nash's principal place of business is in the State of Tennessee, where it directed the illegal telephone calls at issue in this case.

7.      Venue is proper in the United States District Court for the Middle District of Tennessee pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a) because Defendant No Tax 4 Nash is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced, all known individual Defendants reside in this judicial district,

and Defendant No Tax 4 Nash's contacts with this judicial district are sufficient to subject it to personal jurisdiction here.

## PARTIES

8.      Plaintiff Rachael Anne Elrod is, and at all times mentioned herein was, an individual citizen of the State of Tennessee and resident of Nashville.

9.      Plaintiff Andrew Kaufman is, and at all times mentioned herein was, an individual citizen of the State of Tennessee and resident of Nashville.

10.     Plaintiff Sarah Martin is, and at all times mentioned herein was, an individual citizen of the State of Tennessee and resident of Nashville.

11.     Defendant "No Tax 4 Nash" (or "NoTax4Nash") is a corporation, association of persons banded together for a specific purpose, or the trade name of a corporation or association. Its mailing address, P.O. Box 210976, Nashville, TN 37221, is registered to Defendant Jim Roberts.

12.     Defendants Jim Roberts, Michelle Foreman, and Kimberly Edwards are, and at all times mentioned herein were, individual citizens of the State of Tennessee.

13.     Defendants John Does 1-10 are individuals and entities whose identities are presently unknown to Plaintiffs and will be revealed in discovery, and who placed the calls at issue in this action or who directed the placement of the calls at issue in this action by actual or apparent agents as their principals, or ratified their agents' acts.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

14.    In 1991, Congress enacted the TCPA,[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

15.    The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party. The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."[2]

16.    According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

[2] 47 U.S.C. § 227(b)(1)(A)(iii).

[3] Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

17.    In 2003, the FCC affirmed that it is unlawful "to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number."[4]

18.    The 2003 FCC order defined a predictive dialer as "an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call."[5]  The FCC concluded that "[t]he basic function of such equipment . . . [is] the capacity to dial numbers without human intervention."[6]  The 2008 Declaratory Ruling "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."[7]  And in yet another order issued in 2012, the FCC again reiterated that the TCPA's definition of an ATDS "covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists."[8]  In 2018, a D.C. Circuit decision struck down portions of a 2015 FCC Order, but the prior FCC Orders are still binding.

19.    Courts have long held that that a "called party" under the TCPA is the recipient of the call, not the party the caller was intending to reach.[9]

---

[4] *Id.*, ¶ 165. *See* 47 U.S.C. § 227(b)(1), which contains exceptions for calls made for emergency purposes or made with the prior express consent of the called party.
[5] *Id.* at 14,143 n. 31.
[6] *Id.* at 14,092.
[7] 23 FCC Rcd. at 566.
[8] In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 FCC Rcd. 15391, 15399 (2012).
[9] *See, e.g., Osorio v. State Farm Bank, F.S.B.,* 746 F.3d 1242, 1251 (11th Cir. 2014); *Soppet v. Enhanced Recovery Co., LLC,,* 679 F.3d 637, 638-39 (7th Cir. 2012).

20.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it "reiterate[d] that the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party."[10]

21.     In a portion unaffected by the D.C. Circuit, the 2015 FCC Order held that consumers may revoke consent through reasonable methods. Thus, consumers may revoke consent through any reasonable method, including orally: "[c]onsumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities."[11]

22.     A single call using both a prerecorded voice and an autodialer constitutes two violations of the TCPA, even if both violations arose from the same call. *See Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101 (11th Cir. 2015).

23.     The TCPA and the Regulations impose liability on a person or entity where calls are made on its behalf. The FCC has found that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations. Indeed, vicarious liability is a critical feature of the TCPA, which does not permit a party to avoid liability by placing it on its expressly, impliedly, or apparently authorized agents. *See, e.g., Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Mem. And Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995); *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674-75 (2016).

---

[10] In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 ("FCC Declaratory Ruling"), 23 F.C.C.R. 559, ¶ 11, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).
[11] 2015 Order at (¶ 64).

24.    Political campaign-related calls or text messages are not exempt from the TCPA or the FCC's rules and require the called party's prior express consent if an autodialer is used to send the messages or a prerecorded message is played on the call.

25.    The FCC issued a biennial reminder for political campaigns about robocalls and text abuse on March 14, 2016 with enforcement advisory number 2016-03:

> **Prohibition Against Prerecorded Voice Messages and Autodialed Calls to Cell Phones and Other Mobile Services.** Prerecorded voice messages and autodialed calls (including autodialed live calls, prerecorded or artificial voice messages, and text messages) to cell phones and other mobile services such as paging systems are prohibited, subject to only three exceptions: (1) calls made for emergency purposes, (2) calls made with the prior express consent of the called party, (3) and calls made to collect debts "owed to or guaranteed by the United States." **This broad prohibition covers prerecorded voice and autodialed calls, including those sent by nonprofit or political campaign-related organizations.** Callers contending that they have the prior express consent to make prerecorded voice or autodialed calls to cell phones or other mobile service numbers have the burden of proof to show that they obtained such consent. Further, call recipients may revoke their consent to be called using any reasonable method including verbally or in writing.

FCC Enforcement Advisory No. 2016-03, available at https://docs.fcc.gov/public/attachments/ DA-16-264A1.pdf (accessed July 17, 2020) (citations omitted, second emphasis added).

26.    On July 6, 2020, the U.S. Supreme Court rejected a challenge by political organizations seeking to invalidate the TCPA's restrictions on political campaign calls and texts, holding that "plaintiffs still may not make political robocalls to cell phones[.]" *Barr v. Am. Ass'n of Political Consultants, Inc.*, No. 19-631, 2020 WL 3633780, at *2 (U.S. July 6, 2020).

## FACTUAL ALLEGATIONS

27.    Plaintiffs are, and at all times mentioned herein were, "persons" as defined by 47 U.S.C. § 153(39).

28.    On or around July 16, 2020, Plaintiffs received autodialed and pre-recorded calls on their cellular phones from a group identifying itself as "No Tax for Nash."

29.    Plaintiff Rachael Anne Elrod was sitting at home with her husband on the evening

of July 16, 2020, when her cellular phone rang. The incoming telephone number, (615) 348-

5237, was not familiar to her. She answered the call on speakerphone and said "Hello?" There

was silence, and she said "Hello?" a second time. Then a prerecorded message played, featuring

a female voice saying:

> Nashville voters, if you would like to sign the recall petition for the mayor and
> council members who supported the 34% property tax increase, we will be at all
> 11 polling locations on Friday and Saturday for early voting. If you have any
> questions, find us on Facebook or go to our website, notax4nash.com. Have a
> wonderful evening, and don't forget to vote! Paid for by No Tax 4 Nash.

30.    Elrod recognized the call as using an automated telephone dialing system because

there was a significant delay after she answered before the recorded message began. In addition,

the voice tone and background noise on the call sounded prerecorded, as opposed to a live voice.

31.    Plaintiff Andrew Kaufman received an identical call on the evening of July 16,

2020. He was at home with his family when he received an incoming call on his cellular phone

from (615) 348-5237, a number he did not recognize. He did not answer the call but allowed it

to go to his voicemail.

32.    Upon checking his voicemail, Kaufman heard a prerecorded message identical to

the message described in paragraph 29. He recognized the call as using an automated telephone

dialing system because there was an approximately three-second delay at the beginning of the

voicemail message before the recorded message began. In addition, the voice tone and

background noise on the message sounded prerecorded, as opposed to a live voice.

33.    Plaintiff Sarah Martin received an identical call on the evening of July 16, 2020.

She was at home with her husband at approximately 8:32 p.m. when she received an incoming

call on her cellular phone from (615) 348-5237, a number she did not recognize. She did not answer the call, and it went to her voicemail.

34.    Upon checking her voicemail, Martin heard a prerecorded message identical to the message described in paragraph 29. She recognized the call as using an automated telephone dialing system because there was an approximately three-second delay at the beginning of the voicemail message before the recorded message began. In addition, the voice tone and background noise on the message sounded prerecorded, as opposed to a live voice.

35.    That evening, dozens of residents and former residents of Nashville complained on social media platforms about receiving an annoying, harassing prerecorded "robocall" playing the message described in paragraph 28. Some people posted screenshots of voicemail messages from the same phone number that called Elrod and Kaufman; they appeared to be identical to the voicemail message received by Mr. Kaufman.

36.    Defendants are, and at all times mentioned herein were, "persons," as defined by 47 U.S.C. § 153(39).

37.    Defendant "No Tax 4 Nash" paid for, authorized, and directed the unwanted robocalls to Plaintiffs and members of the proposed class, according to the recorded message on the call.

38.    Defendant Jim Roberts controls Defendant No Tax 4 Nash, and the mailbox where it receives mail is registered in his name.

39.     Defendant Michelle Foreman is "spearhead[ing]" Defendant No Tax 4 Nash.[12]
She is the entity's public "spokeswoman" and representative.[13] She works in concert with "a
small team of people that may not want to be named[.]"[14]

40.     According to media reports, Defendant Roberts, leader of a political referendum
campaign to implement the Nashville Taxpayer Protection Act, is involved with the illegal
robocall campaign, along with Defendant Foreman and Defendant Kimberly Edwards.[15]

41.     Other individuals and/or entities whose names are not known to Plaintiffs but will
be revealed in discovery are funding and directing the illegal robocall campaign described
above,[16] or placing the illegal calls described herein as agents of one or more Defendants.  Courts
"have routinely found that parties are permitted to conduct discovery to discover the identities of
John Doe defendants." *Martin v. Glob. Mktg. Research Servs., Inc.*, No.
614CV1290ORL31KRS, 2015 WL 6083537, at *6 (M.D. Fla. Oct. 15, 2015) (TCPA case).

---

[12] Tennessee Star, "Tennessee Star Senior Reporter Laura Baigert Discusses Two Grassroots Nashville Campaigns Opposing Mayor Cooper's Property Tax Increase," https://tennesseestar.com/2020/05/28/tennessee-star-senior-reporter-laura-baigert-discusses-two-grassroots-nashville-campaigns-opposing-mayor-coopers-property-tax-increase/ (accessed July 17, 2020).

[13] Tennessee Star, "Grassroots Groups Pledge to Recall Nashville Mayor and Council Members Who Vote for a Property Tax Increase," https://tennesseestar.com/2020/06/17/grassroots-groups-pledge-to-recall-nashville-mayor-and-council-members-who-vote-for-a-property-tax-increase/ (accessed July 17, 2020).

[14] Tennessee Star, "Citizens Fight Back Against Mayor John Cooper's Proposed 32 Percent Property Tax Increase," https://tennesseestar.com/2020/05/27/citizens-fight-back-against-mayor-john-coopers-proposed-32-percent-property-tax-increase/ (accessed July 17, 2020).

[15] Nate Rau, *Tennessee Lookout*, "Secretly-funded efforts target mayor, Nashville tax policy," https://tennesseelookout.com/2020/07/17/nashville-lawyer-leads-secretly-funded-group-to-to-recall-mayor-change-tax-approval/ (accessed July 17, 2020); Nate Rau, July 16, 2020 Tweet, https://twitter.com/tnnaterau/status/1283945302236508163.

[16] *See* Tennessee Star, "Carol Swain Describes Grassroots Movement to Stop the 32 Percent Property Tax Increase Proposal," May 22, 2020, *available at* https://tennesseestar.com/2020/05/22/nashville-taxpayer-protection-act-carol-swain-describes-grassroots-movement-to-stop-the-32-perecent-property-tax-increase-proposal/ (describing private meeting with mayor and "important citizens" and "concerned citizens" including Michelle Foreman, Lee Beaman, Carey Bringle, Steve Moore, Karen Moore, and Carol Swain).

42.    In receiving unwanted and unsolicited calls on their cellular telephones, Plaintiffs suffered concrete harm in the form of lost time spent fielding the unwanted calls, loss of use of their cellular telephones as the calls came in, loss of capacity of the voice mailbox (in Mr. Kaufman's and Ms. Martin's case), invasion of their privacy, and intrusion upon their seclusion and evening time with their families.

43.    All telephone contact made by or at the direction of Defendants to Plaintiffs on their cellular telephones occurred via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and used "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A).

44.    The telephone numbers on which Defendants used to contact Plaintiffs via an "artificial or prerecorded voice" made by an "automatic telephone dialing system" were assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

45.    Plaintiffs did not provide their "prior express consent" allowing Defendants to place telephone calls to Plaintiffs' cellular phone utilizing an "artificial or prerecorded voice" and placed by an "automatic dialing system" within the meaning of 47 U.S.C. § 227(b)(1)(A). In fact, Plaintiffs never had any dealings with Defendants before receiving the call paid for by No Tax 4 Nash.

46.    Telephone calls made to Plaintiffs' cellular phones by Defendants were not "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

47.    Telephone calls to Plaintiffs' cellular phone made by Defendants utilized an "artificial or prerecorded voice" and an "automatic telephone dialing system" for non-emergency purposes and in the absence of Plaintiff's prior express consent violated 47 U.S.C. § 227(b)(1)(A).

48.      Defendants bear the burden of demonstrating that they placed the calls with

Plaintiffs' prior express consent. *See, e.g., Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3

(N.D. Ill. Dec. 1, 2014).

## CLASS ACTION ALLEGATIONS

49.      Plaintiffs bring this action on behalf of himself and behalf of all other persons

similarly situated (hereinafter referred to as "the Class").

50.      Plaintiffs propose the following Class definition, subject to amendment as

appropriate:

> All persons in the United States who received a call from "No Tax
> 4 Nash" from an automated telephone dialing system and/or
> utilizing a prerecorded voice on or after July 16, 2020, without the
> recipients' prior express consent.

Collectively, all these persons will be referred to as "Class members." Plaintiffs represent, and

are a member of, the Class. Excluded from the Class are Defendants and any entities in which a

Defendant has a controlling interest, Defendants' agents and employees, any Judge to whom this

action is assigned and any member of such Judge's staff and immediate family, Plaintiffs'

counsel, and any claims for personal injury, wrongful death and/or emotional distress.

51.      Plaintiffs do not know the exact number of members in the Class, but on

information and belief, the number of Class members at minimum is in the thousands.

52.      Plaintiffs and all members of the Class have been harmed by Defendants' acts,

including, but not limited to, the invasion of their privacy, annoyance, waste of time, depletion of

their cellular phone battery, and the intrusion on their cellular telephone that occupied it from

receiving legitimate communications.

53.      This Class Action Complaint seeks injunctive relief and money damages.

54.    The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of claims in a class action will provide substantial benefit to the parties and the judicial economy of the Court in avoiding a multiplicity of identical suits. The Class can be identified easily through records maintained by Defendants and/or any vendors who placed the illegal calls on their behalf.

55.    There are well defined, nearly identical, questions of law and fact affecting all Class members. The questions of law and fact involving the Class claims predominate over questions which may affect individual Class members. Those common questions of law and fact include, but are not limited to, the following:

> a.    Whether non-emergency calls made to Plaintiffs and Class members' cellular telephones used an automatic telephone dialing system and/or an artificial or prerecorded voice;
>
> b.    Whether such calls were made by or at the direction of one or more of the Defendants;
>
> c.    Whether Defendants can meet their burden of showing they obtained prior express consent (*i.e.*, consent that is clearly and unmistakably stated) to make such calls;
>
> d.    Whether Defendants' conduct was knowing and/or willful;
>
> e.    Whether Defendants are liable for damages, and the amount of such damages; and
>
> f.    Whether Defendants should be enjoined from engaging in such conduct in the future.

56.    As persons who received telephone calls using an automatic telephone dialing system and an artificial or prerecorded voice, without their prior express consent within the meaning of the TCPA and Rules, Plaintiffs assert claims that are typical of each Class member. Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have no interests which are antagonistic to any member of the Class.

57.     Plaintiffs have retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA.

58.     A class action is the superior method for the fair and efficient adjudication of this controversy. Classwide relief is essential to compel Defendants to comply with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims against Defendants is small because the statutory damages in an individual action for the violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and prerecorded the Class members did not provide prior express consent required under the statute to authorize such calls to their cellular telephones.

59.     Defendants have acted on grounds applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiffs allege that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

## FIRST COUNT

## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

60.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

61.    The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

62.    As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and each member of the Class are entitled to treble damages of up to $1,500.00 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

63.    Plaintiffs and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future. Plaintiffs and Class members are also entitled to an award of attorneys' fees and costs.

## SECOND COUNT

### STATUTORY VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ.*

64.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

65.    The foregoing acts and omissions of Defendants constitutes numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

66.    As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and Class members are entitled to an award of $500.00 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

67.    Plaintiffs and Class members are also entitled to and do seek injunctive relief prohibiting Defendants' violation of the TCPA in the future.

## THIRD COUNT

### CIVIL CONSPIRACY TO VIOLATE THE TELEPHONE
### CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ.*

68.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

69.     Defendants agreed among themselves to violate the TCPA and injure Plaintiffs and Class members by conducting an illegal robocalling campaign to encourage Nashville residents to sign their referendum petition on Friday, July 17, 2020, and Saturday, July 18, 2020.

70.     Defendant Roberts procured a post office box on behalf of Defendant No Tax 4 Nash, Defendants created a website, hired a telephone call vendor (a Defendant John Doe), directed and approved a recorded message to be played to unsuspecting call recipients, supervised the calls, and paid for these services, achieving the outcome of generating awareness of their referendum petition drive.

71.     Defendants met in person and/or communicated by phone and email to achieve the objectives of the conspiracy.

72.     Plaintiffs and Class members were injured by the conspiracy in the form of the annoyance, burden, time, and expense of dealing with the unwanted, illegal robocalls.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court grant Plaintiffs and all Class members the following relief against Defendants:

A.      Injunctive relief prohibiting such violations of the TCPA by Defendants in the future;

B.      As a result of Defendants' willful and/or knowing violations of 47 U.S.C.

§ 227(b)(1), Plaintiffs seek for themselves and each Class member treble damages, as provided

by statute, of up to $1,500.00 for each and every violation of the TCPA;

C.      As a result of Defendants' violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for

themselves and each Class member $500.00 in statutory damages for each and every violation of

the TCPA;

D.      An award of attorneys' fees and costs to counsel for Plaintiffs and the Class;

E.      An order certifying this action to be a proper class action pursuant to Federal Rule

of Civil Procedure 23, establishing an appropriate Class (and any Subclasses the Court deems

appropriate), finding that Plaintiffs are proper representatives of the Class, and appointing the

lawyers and law firms representing Plaintiffs as counsel for the Class;

F.      A trial by jury on all counts so triable; and

G.      Such other relief as the Court deems just and proper.

Date: July 17, 2020                          Respectfully submitted,


                                             John Spragens, TN Bar No. 31445
                                             SPRAGENS LAW PLC
                                             311 22nd Ave. N.
                                             Nashville, TN 37203
                                             T: (615) 983-8900
                                             F: (615) 682-8533

                                             *Attorneys for Plaintiffs and the Proposed Class*

## *3:20cv657, Hawkins V. Well Path, Llc*

US District Court Docket

United States District Court, Tennessee Middle

(Nashville)

**This case was retrieved on 11/12/2020**

## Header

**Case Number:** 3:20cv657
**Date Filed:** 07/31/2020
**Assigned To:** District Judge William L. Campbell, Jr
**Referred To:** Magistrate Judge Jeffery S. Frensley
**Nature of Suit:** *Telephone Consumer Protection Act*
(TCPA) (485)
**Cause:** Restrictions of Use of *Telephone* Equipment
**Lead Docket:** None
**Other Docket:** New York Southern, 7:19-cv-08969
**Jurisdiction:** Federal Question

**Class Code:** Closed
**Closed:** 02/02/2021
**Statute:** 47:227
**Jury Demand:** Plaintiff
**Demand Amount:** $5,000,000
**NOS Description:** *Telephone Consumer Protection Act*
(TCPA)

## Litigants

Janie Hawkins
Individually and on behalf of all others similarly situated |
**Plaintiff**

## Attorneys

James Gerard Stranch , IV
ATTORNEY TO BE NOTICED
*Branstetter, Stranch & Jennings*, PLLC
223 Rosa L. Parks Avenue Suite 200
Nashville, TN  37203
USA
(615) 254-8801    Fax: (615) 255-5419
Email:Gerards@bsjfirm.Com

Joey P. Leniski , Jr.
ATTORNEY TO BE NOTICED
*Branstetter, Stranch & Jennings*, PLLC
223 Rosa L. Parks Avenue Suite 200
Nashville, TN  37203
USA
(615) 254-8801    Email:Joeyl@bsjfirm.Com

Joseph Marchese
ATTORNEY TO BE NOTICED
Bursor & Fisher, P.A.
888 7th Avenue Suite 304
New York, NY  10106
USA
(646) 837-7150    Fax: (212) 989-9163
Email:Jmarchese@bursor.Com

Philip Lawrence Fraietta
ATTORNEY TO BE NOTICED
Bursor & Fisher, P.A.
888 7th Avenue Suite 304
New York, NY  10106
USA
(646) 837-7150    Fax: (212) 989-9163

RYAN WATSTEIN

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANIE HAWKINS, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>    v.<br><br>WELL PATH, LLC,<br><br>            Defendant. | Civil Action No. 7:19-cv-08969<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Janie Hawkins ("Plaintiff" or "Ms. Hawkins"), individually and on behalf of all others similarly situated, alleges the following upon information and belief against Well Path, LLC ("Well Path" or "Defendant") regarding Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). Plaintiff brings this Complaint to: (1) stop Defendant's practice of placing calls and sending text messages using an automatic telephone dialing system ("ATDS") to the landline telephones and cellular telephones of consumers nationwide without their prior express written consent; (2) stop Defendant's practice of placing calls and sending text messages using an artificial or prerecorded voice or message to the landline telephones and cellular telephones of consumers nationwide without their prior express written consent; (3) enjoin Defendant from continuing to place calls or send text messages using an ATDS to consumers who did not provide their prior express written consent to receive them; and (4) obtain redress for all persons injured by its conduct.

## JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which, *inter alia*, amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as

here: (a) there are 100 or more members in the proposed class; (b) some members of the proposed Class have a different citizenship from Defendant; and (c) the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in aggregate. *See* 28 U.S.C. § 1332(d)(2) and (6).

2.      This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves violations of a federal statute, the TCPA.

3.      This Court has personal jurisdiction over Defendant because Defendant's wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

4.      Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant's wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

<u>**PARTIES**</u>

5.      Plaintiff Janie Hawkins is, and at all times mentioned herein was, a resident of Spring Valley, New York, and a citizen of the State of New York.

6.      Defendant Well Path, LLC is a corporation organized under the laws of Tennessee, with a principal place of business at 1283 Murfreesboro Road, Nashville, Tennessee 37217. Well Path conducts business in this District and throughout the United States.

<u>**FACTS COMMON TO ALL CAUSES OF ACTION**</u>

A.      **The TCPA Of 1991**

7.      In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

8.      The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers," defined as equipment which "has the capacity . . . (a) to store or

produce telephone numbers to be called, using a random or sequential number generator; and (b) to dial such numbers." 47 U.S.C. § 227(a)(1). Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party. The same section forbids making calls using an "artificial or prerecorded voice." *Id.*

9.    The FCC has issued rulings clarifying that in order to obtain an individual's consent, a clear, unambiguous, and conspicuous written disclosure must be provided by the individual. 2012 FCC Order, 27 FCC Rcd. at 1839 ("[R]equiring prior written consent will better protect consumer privacy because such consent requires conspicuous action by the consumer—providing permission in writing—to authorize autodialed or prerecorded telemarketing calls. . . .").

10.    The FCC has also ruled that consumers are entitled to the same protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has subsequently confirmed that the prohibition on using automatic telephone dialing systems to make calls to wireless phone numbers applies to text messages (e.g. phone-to-phone [short message service]), as well as voice calls.") (internal quotations omitted).

**B.    Defendant's Calls and Text Messages To Plaintiff And Class Members**

11.    In or about February 2019, Plaintiff received calls on both her landline telephone and cellular telephone from Defendant (the "Calls"). Plaintiff's landline telephone number is (845) 425-0551. Plaintiff's cellular telephone number at the time of the first call was (845) 608-6068.

12.    The Calls described a job opportunity at Well Path and gave Plaintiff the option to inquire further about the opportunity.

13.     Additionally, in or about February 2019, Plaintiff received a text on her cellular telephone from Defendant (the "Text"). Plaintiff's cellular telephone number at the time of the first text was (845) 608-6068.

14.     The Text also described a job opportunity at Well Path and gave Plaintiff the option to inquire further about the opportunity.

15.     Upon information and belief, both the Calls and the Text originated from a telephone number owned and operated by Defendant.

16.     Defendant sent the Calls and the Text using an automatic telephone dialing system ("ATDS") without obtaining Ms. Hawkins' prior express written consent.

17.     When Plaintiff answered Defendant's calls, she heard a momentary pause. Further, the Text was impersonal and generic. Both are hallmarks of an ATDS. According to the Federal Communications Commission and experts on telecommunications equipment, an ATDS has the inherent present capacity to both (1) store and dial a list of telephone numbers without human intervention, and (2) generate random or sequential telephone numbers and to then text those numbers.

18.     Prior to the calls and text messages at issue in this action, Ms. Hawkins had no contact with Defendant. She has never consented in writing, or otherwise, to receive autodialed or prerecorded calls or text messages from Defendant.

19.     Defendant has continued to make numerous calls and send numerous text messages to Plaintiff's landline telephone and cellular telephone.

20.     Upon information and belief, Defendant to made similar calls and sent similar text messages using the ATDS to a large number of consumers.

21.     Defendant knowingly sent (and continues to send) autodialed and prerecorded calls and text messages to the landline telephones and cellular telephones of consumers without

the prior express written consent of the call and text recipients. In so doing, Defendant not only

invaded the personal privacy of Plaintiff and members of the putative Class, but also

intentionally and repeatedly violated the TCPA.

## CLASS ACTION ALLEGATIONS

22.    Plaintiff brings this action on behalf of herself and all other persons similarly

situated.

23.    Plaintiff proposes the following Class definition:

> All persons within the United States who (a) received a call on his
> or her landline telephone and/or cellular telephone; (b) received a
> text message on his or her cellular telephone; (c) made by or on
> behalf of Defendant; (d) without giving prior express written
> consent to Defendant; (e) at any time in the period that begins four
> years before the filing of the complaint in this action to the date
> that class notice is disseminated.

24.    Plaintiff represents, and is a member of, this proposed Class. Excluded from the

Classes are Defendant and any entities in which Defendant has a controlling interest,

Defendant's agents and employees, any Judge and/or Magistrate Judge to whom this action is

assigned, and any member of such Judges' staffs and immediate families.

25.    **Numerosity.**  Plaintiff does not know the exact number of members in the

proposed Class, but reasonably believes, based on the scale of Defendant's business, that the

Class is so numerous that individual joinder would be impracticable.

26.    **Existence and predominance of common questions of law and fact.**  Plaintiff

and all members of the proposed Class have been harmed by the acts of Defendant in the form of

multiple involuntary telephone and electrical charges, the aggravation, nuisance, and invasion of

privacy that necessarily accompanies the receipt of unsolicited and harassing calls and text

messages, and violations of their statutory rights.

27.     The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a plethora of identical suits.

28.     The proposed Class can be easily identified through records maintained by Defendant.

29.     There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact involving the class claims predominate over questions which may affect individual members of the proposed class. Those common question of law and fact include, but are not limited to, the following:

      a.  Whether Defendant made calls and sent text messages to Plaintiff and class members using an ATDS and/or an artificial or prerecorded call and text message without their prior express written consent;

      b.  Whether Defendant's conduct was knowing and/or willful;

      c.  Whether Defendant is liable for damages, and the amount of such damages; and

      d.  Whether Defendant should be enjoined from engaging in such conduct in the future.

30.     **Typicality.** Plaintiff asserts claims that are typical of each member of the Class because they are all persons who received calls or text messages on their landline telephones or cellular telephones using an ATDS without their prior express written consent. Plaintiff will fairly and adequately represent and protect the interests of the proposed class, and has no interests which are antagonistic to any member of the proposed class.

31.     **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of the proposed class, and has no interests which are antagonistic to any member of the proposed Class.

32.    Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes.

33.    **Superiority.** A class action is the superior method for the fair and efficient adjudication of this controversy.

34.    Classwide relief is essential to compel Defendant to comply with the TCPA.

35.    The interest of the members of the proposed Class in individually controlling the prosecution of separate claims against Defendant is small because the statutory damages in an individual action for violation of the TCPA are relatively small.

36.    Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls and text messages at issue are all automated and the members of the Class, by definition, did not provide the prior express written consent required under the statute to authorize calls and text messages to their landline telephones or cellular telephones.

37.    Defendant has acted on grounds generally applicable to the proposed Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the proposed Class as a whole appropriate.

38.    Moreover, upon information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## FIRST CAUSE OF ACTION
## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *et seq.*

39.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

40.    The foregoing acts and omissions of Defendant constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

41.    As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and members of the proposed Class are entitled to treble damages of up to $1,500.00 for each and every call or text message sent in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

42.    Plaintiff and members of the proposed Class are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendant in the future.

43.    Plaintiff and members of the proposed Classes are also entitled to an award of attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *et seq.*

44.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

45.    The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

46.    As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and members of the proposed Classes are entitled to an award of $500.00 in statutory damages for each and every call or text message made in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

47.    Plaintiff and members of the proposed Classes are also entitled to, and do, seek injunctive relief prohibiting such conduct violating the TCPA by Defendant in the future.

48.     Plaintiff and members of the proposed Class are also entitled to an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all members of the proposed Class the following relief against Defendant:

a.   Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

b.   As a result of Defendant's willful and/or knowing violations of the TCPA, Plaintiff seeks for herself and each member of the proposed Class treble damages, as provided by statute, of up to $1,500.00 for each and every call or text message that violated the TCPA;

c.   As a result of Defendant's violations of the TCPA, Plaintiff seeks for herself and each member of the proposed Class $500.00 in statutory damages for each and every call or text message that violated the TCPA;

d.   An award of attorneys' fees and costs to counsel for Plaintiff and the proposed Class;

e.   An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing appropriate the Class, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firm representing Plaintiff as counsel for the Class;

f.   Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated:  September 26, 2019

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:  _/s/ Philip L. Fraietta_
       Philip L. Fraietta

Joseph I. Marchese
Philip L. Fraietta
888 Seventh Ave.
New York, NY 10025
Telephone: (646) 837-7142
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com
       pfraietta@bursor.com

*Attorneys for Plaintiff*



**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 1 6 2020

JAMES W. McCORMACK, CLERK
By:_____
                    DEP CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

CHRIS OLSEN,                                    )
on behalf of himself and all others            )
similarly situated,                            )
                                               )
          Plaintiff,                           )
                                               )
                                               )
vs.                                            )    **CASE NO. 4:20-cv-00165-BSM**
                                               )    **JUDGE BRIAN S. MILLER**
DESERT LAKE GROUP, LLC, d/b/a FIRST            )    **Magistrate Judge Kierney**
CLASS HERB TINCTURE, d/b/a FIRST               )
CLASS HERBALIST CBD, d/b/a HERBALIST           )    **JURY DEMAND**
OILS, d/b/a HERBALIST SILVER, d/b/a            )
HERBALIST SLEEP; SOCIALLITY LLC,               )    **CLASS ACTION**
d/b/a SOCIALLITY ACCESSNOW HEALTH              )
COMMUNITY, d/b/a SOCIALITY GROUP;              )
PETER GALLIC; EXPRESS REVENUE, INC;            )
OFFER SPACE, LLC, d/b/a DIAL RESPONSE,         )
d/b/a FULFILL PATH; TRAFFIC SPACE,             )
LLC; and JOHN DOES 1-10,                       )
                                               )
          Defendants.                          )

**FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF UNDER
THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227,
AND THE ARKANSAS CIVIL ACTION BY
CRIME VICTIMS ACT, ARK CODE ANN. § 16-118-107.**

COMES now Chris Olsen, on behalf of himself and all other persons or entities similarly

situated, as Representative Plaintiff, and files this Class Action Complaint against the Defendants

Desert Lake Group, LLC, d/b/a First Class Herb Tincture, d/b/a First Class Herbalist CBD, d/b/a

Herbalist Oils, d/b/a Herbalist Silver, d/b/a Herbalist Sleep, Sociallilty LLC, d/b/a Sociallity

AccessNow Health Community, d/b/a Sociallity Group, Peter Gallic, Express Revenue, Inc., Offer

Space LLC, d/b/a Dial Response, d/b/a Fulfill Path, Traffic Space, LLC, and John Does 1-10

1

("Defendants").[1] Representative Plaintiff brings this Class Action Complaint resulting from the illegal actions of Defendants in negligently, and/or willfully, sending unsolicited, autodialed text messages to the cellular telephones of Representative Plaintiff and others in the Class without their prior express consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 et seq., ("TCPA"), as well as illegally attempting to disguise the origin of Defendants' illegal calls through the criminal act of "spoofing" which is a felony in the State of Arkansas and which therefore renders Defendants further liable to the Class pursuant to Ark. Code Ann. § 16-118-107. Representative Plaintiff, for his Class Action Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys and would respectfully show the following:

1.      The TCPA strictly forbids unsolicited text messages exactly like those alleged in this Complaint – intrusive text messages to private cellular phones, placed via autodialer technology to numbers obtained without the prior express consent of the recipients.

2.      Further, Ark. Code Ann. § 16-118-107 provides Arkansans with an additional civil cause of action when the conduct employed against them by a Defendant constitutes a felony. The State of Arkansas has made abundantly clear that "spoofing" such as that employed by the Defendants in the case at bar, i.e. the illegal act of disguising the number from which a call to a cellular phone originates, is a felony in the State of Arkansas and will not be tolerated when employed here.

---

[1] As of the filing of this First Amended Class Action Complaint, the case is stayed against bankrupting defendant Desert Lake Group, LLC, d/b/a First Class Herb Tincture, d/b/a First Class Herbalist CBD, d/b/a Herbalist Oils, d/b/a Herbalist Silver, d/b/a Herbalist Sleep. *See* Dkt. 15. The Court lifted the stay as to non-bankrupting defendants. *See* Dkt. 18.

3.      Defendants' violations caused Representative Plaintiff and the members of the Class as defined herein to experience both actual and statutorily recognized harm, including aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing text message calls, necessarily attaches to the deceptive and illegal act of spoofing, and is an unambiguous violation of their statutory rights.

4.      Representative Plaintiff and members of the Class suffered a concrete injury in fact, whether tangible or intangible, that is directly traceable to Defendants' conduct, and is likely to be redressed by a favorable decision in this action.

5.      Representative Plaintiff seeks an injunction stopping Defendants from sending unsolicited text messages in violation of the TCPA and prohibiting further illegal "spoofing" as defined by Arkansas law, as well as an award of statutory damages under the TCPA, together with an award of costs and reasonable attorneys' fees associated with the necessity of prosecuting this action against Defendants.

## PARTIES, JURISDICTION AND VENUE

6.      Representative Plaintiff Chris Olsen is an Arkansas citizen and resident of Russellville, Pope County, Arkansas. Hereinafter, Chris Olson will be referred to in his individual capacity as "Representative Plaintiff."

7.      Defendant Desert Lake Group, LLC, d/b/a First Class Herb Tincture, d/b/a First Class Herbalist CBD, d/b/a Herbalist Oils, d/b/a Herbalist Silver, d/b/a Herbalist Sleep ("Desert Lake Group") is a for-profit corporation in Utah, having an address of 6975 Union Park Avenue, Suite 600, Cottonwood Heights, UT 84047, and may be served through its registered agent, Darin Toone, at 6975 Union Park Avenue, Suite 600, Cottonwood Heights, UT 84047.

8.      Defendant Sociallilty LLC, d/b/a Sociallity AccessNow Health Community, d/b/a Sociallity Group ("Sociallity") is a for-profit company incorporated in Delaware, and may be

3

served through its registered agent at Harvard Business Services, Inc., 16192 Coastal Highway, Lewes, DE 19958.

 9. Defendant Peter Gallic is a citizen and resident of New Jersey, who may be served at 44 Hillcrest Road, Warren, New Jersey 07059. Mr. Gallic is an officer of Sociallity.

 10. Defendant Express Revenue, Inc. ("Express") is a for-profit company incorporated in Florida, and may be served through its registered agent, Kofsky Weinger PA, at 4010 Sheridan St, Hollywood, FL 33021. Express is a company engaged in the business of affiliate internet marketing, which is a service whereby one website or internet advertisement is used to drive internet traffic and customers to another website which is selling a product or service.

 11. Defendant Offer Space LLC, d/b/a Dial Response, d/b/a Fulfill Path ("Offer Space") is a for-profit company incorporated in Utah, and may be served through its registered agent, Christopher Armstrong, at 1261 South 820 East, Suite 210, American Fork, UT 84003. Offer Space provides direct response marketing services, customer service and risk mitigation technology services.

 12. Traffic Space, LLC ("Traffic Space") is a for-profit company incorporated in Utah and may be served through its registered agent, Anderson & Karrenberg, P.C., 50 W. Broadway, Suite 700, Salt Lake City, UT 84101. Traffic Space provides marketing and customer acquisition services.

 13. Defendants John Does 1-10 represent those persons, corporations, or other legal entities that acted as agents, consultants, independent contractors or representatives of the persons or corporations, that were responsible for creating and causing to be sent the text messages received by Representative Plaintiff and the Class defined herein and whose identities at this time are unknown but will be substituted by amendment when ascertained.

14. The claims of the classes of persons represented by the Representative Plaintiff arise pursuant to the provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (hereinafter, "TCPA") and the Arkansas Civil Action by Crime Victims Act, Ark. Code Ann. § 16-118-107, respectively.

15. This Court has jurisdiction over this action pursuant to Ark. Code Ann. §16-4-101 *et seq*. This Court has jurisdiction over the Defendants because at all relevant times they conducted business in Arkansas and the claims advanced by the Representative Plaintiff in this action arise directly and specifically from Defendants' illegal contacts with and into the State of Arkansas.

16. Venue is proper in Pope County both in that the Representative Plaintiff is a resident of this County and in that the conduct which forms the basis of this action was specifically directed by Defendants into and towards Pope County.

## NATURE OF THE ACTION

17. In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA), in response to a growing number of consumer complaints regarding certain telemarketing practices.

18. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party. As recognized by the Federal Communications Commission ("FCC") and the Courts, a text message is a call under the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009).

19. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found,

5

automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

20.     The term "call" under the TCPA and its promulgating regulations includes text messages. *See* Rules and Regulation Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14115, para. 165 (2003) (2003 TCPA Order).

21.     One of the most bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for transmission and receipt of short text messages to and from wireless telephones.

22.     SMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. Because wireless telephones are carried on their owner's person, SMS text message are received virtually anywhere in the world.

23.     Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

24.     Moreover, the transmission of an unsolicited SMS text message to a cellular device is distracting and aggravating to the recipient; intrudes upon the recipient's seclusion; wastes a quantifiable amount of available data on the recipient's cellular device, thereby reducing its data

6

storage capacity; temporarily reduces the available computing power and application processing speed on the recipient's device; diminishes the available battery power which shortens the battery life; and requires expending a quantifiable amount of energy (electricity) to recoup the battery power lost as a result of receiving such a message.

25.    As of October 16, 2013, express written consent is required to make any such telemarketing calls of text messages to the telephones of consumer.  The express written consent must be signed and be sufficient to show the consumer received clear and conspicuous disclosure of the significance of providing consent and must further unambiguously agree to receive future phone calls.

26.    Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Representative Plaintiff provided express consent within the meaning of the statute.

27.    On July 10, 2015, the FCC released a Declaratory Ruling which clarified that a consumer who had previously provided "express consent" to receive automated calls or text messages has a right to revoke such consent. Under the Declaratory Ruling, consumers can revoke consent using any reasonable method, including orally or in writing, that clearly expresses his or her desire not to receive further calls.  However, even before the release of the FCC Order finding that consent to receive a text message could be revoked, the Mobile Marketing Association declared in October 2012 in its U.S. Consumer Best Practices for Messaging that "[a] subscriber must be able to stop participating and receiving messages from any program by sending STOP to the short code used for that program . . ." and ". . . if the subscriber sent STOP or STOP ALL to the short code, they are opted out of all programs they were enrolled in on that short code. Moreover, the 2015 FCC Order regarding revocation of consent was upheld by the D.C. Circuit.

7

*See ACA Int'l v. Fed. Commc'ns Comm'n*, No. 15-1211, 2018 WL 1352922, at *1 (D.C. Cir. Mar. 16, 2018) ("We uphold the Commission's approach to revocation of consent, under which a party may revoke her consent through any reasonable means clearly expressing a desire to receive no further messages from the caller.")

28.     Finally, TCPA auto-dialer violations such as the those at issue are, in their most duplicitous form, almost always transmitted through the use of "spoofing" technology designed to hide the true identity of the senders responsible for these illegal transmissions.   To address this inherently deceptive form of illegal marketing which has reached virtually epidemic levels in this State and beyond, the Arkansas Legislature made abundantly clear that it will be treated with zero tolerance in the State of Arkansas and, effective April 16, 2019, elevated each such "spoofed" transmission to the level of a Class D Felony.   Ark. Code Ann. § 5-63-205.

## FACTUAL ALLEGATIONS

29.     Representative Plaintiff, a resident of Russellville, Pope County, Arkansas, has, and at all relevant times had, a cellular telephone with text messaging capabilities.   Representative Plaintiff receives text messages ("texts") at the cell numbers associated with that cellular telephone.

30.     On October 26, 2019, Representative Plaintiff received on his cellular telephone the following text from telephone number +1 (657) 325-3495:

> "CHRIS, try these CBD
>  Gummies!  CBD has been
>  medically proven to help
>  support stress, anxiety and
>  pain?
>  cbd123.xyz/XHg3rfSrn
>
> Reply STOP to opt out."

8

31.    The link in the text message directs the recipient to a website called firstclassherbtincture.com, which sells and promotes products and services offered by the Defendants, including the CBD Gummies described in the body of the text message, membership in the Online Fitness Pro Trainer Online Bootcamp and Weight Loss System sponsored by O-Zone, and enrollment in the Sociallity AccessNow health community program.

32.    The telephone number from which the text message to Representative Plaintiff originated, +1 (657) 325-3495, is a non-functioning telephone number.

33.    The October 26, 2019 text is one of several texts received by the Representative Plaintiff during the class period from Defendants of identical and/or substantially similar character to that reproduced above and purporting to originate from the telephone number +1 (657) 325-3495.   It is expected that the list of illegal anonymous cell phone transmissions to the Representative Plaintiff and Class members may likely be supplemented as discovery progresses.

34.    As described above, Defendants engaged in an illegal anonymous auto-dialer texting scheme designed to promote their commercially-available products and services. Specifically, upon information and belief, Defendants caused the sending of text messages to Representative Plaintiff and other individuals for the purpose of driving traffic to an online advertising network.

35.    To this end, upon information and belief, Defendants repeatedly used auto dialers to place text message calls to hundreds if not thousands of individuals in Arkansas and beyond. Specifically, Defendants amassed the names and phone numbers of the Class Members from unknown sources, and then placed unsolicited text messages in furtherance of their respective for-profit and commercial interests.

9

36.     In direct violation of Arkansas civil and criminal law, the anonymous texts falsely purported to originate from the "spoofed" number +1 (657) 325-3495 in an attempt to conceal the true identity of the Defendants.  The forgoing is a currently nonfunctional number of which the Representative Plaintiff is currently aware, though it is expected that the list of illegal spoofed numbers utilized by Defendants against the members of the Class may likely be supplemented as discovery progresses.

37.     Defendants did not obtain any prior express consent, in writing or otherwise, from Representative Plaintiff or any of the Class Members before bombarding their cellular telephones with autodialed telemarketing texts.

38.     These unsolicited text message calls placed to Representative Plaintiff and the Class Members wireless telephone were placed, upon information and belief, via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1) and by using "an artificial or prerecorded voice" system as prohibited by 47 U.S.C. § 227 (b)(1)(A), which had the capacity to produce or store numbers randomly or sequentially, to dial numbers, and to place text message calls to Representative Plaintiff and the Class Members' cellular telephones.

39.     The telephone number that Defendants called was assigned to Representative Plaintiff's cellular telephone pursuant to 47 U.S.C. § 227 (b)(1).

40.     Defendants, and/or their employees and/or its agents, created the offending texts, including the substance of the texts and had the capability to control the contents thereof.

41.     Defendants, and/or their employees and/or its agents, determined the telephone numbers to which the offending texts were sent to the Representative Plaintiff and the Class.

42.     These text message calls constitute calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

10

43.     Neither Representative Plaintiff nor the Class provided Defendants prior express consent to receive unsolicited text message calls pursuant to 47 U.S.C. § 227 (b)(1)(A).

44.     Representative Plaintiff further alleges that in each instance that a text messages was sent, Defendants did so willfully or knowingly.

45.     Representative Plaintiff further alleges on information and belief that in each instance Defendants had actual notice of participation, or a high degree of involvement, in a plan to transmit these unsolicited texts to cell phones by, for example, participating in preparing their content, providing or obtaining the cell phone numbers of Representative Plaintiff or other Class recipients, and knowing that Representative Plaintiff and other Class recipients had not authorized the texts to be sent by prior express invitation or permission.

46.     These text message calls by Defendants are in direct violation of 47 U.S.C. § 227(b)(1).

47.     By illegally contacting Representative Plaintiff and the other Class Members via their cellular telephone with the text messages at issue without their prior express consent, Defendants caused both actual and statutorily recognized harm. With regard to the Representative Plaintiff, this included invasion of privacy, causing him to incur reduced telephone time and capacity for which he had previously paid by having to retrieve or administer the Defendants' illegal text messages, as well as the aggravation, nuisance, worry, and harassment that necessarily accompanied his receipt of unsolicited serial text messages and the time involved in attempting to ascertain both the origin of the number from which he came to realize it had been criminally "spoofed" and how these unknown Defendants obtained his cell phone number.

11

## CLASS ACTION ALLEGATIONS

48.     Representative Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and the following nationwide class (the "Spam Text Class") defined as follows:

> All individuals or entities in the United States who, from four years prior to the filing date of this Complaint through the filing date thereof, received one or more text messages that (1) purported to originate from the telephone number +1 (657) 325-3495, and (2) contains a link to firstclassherbtincture.com.

49.     Representative Plaintiff also brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and the following subclass of Arkansans (the "Spoofed Number Sub-Class") defined as follows:

50.     All individuals or entities in the State of Arkansas who, from four years prior to the filing date of this Complaint through the filing date thereof, received one or more text messages that (1) purported to originate from the telephone number +1 (657) 325-3495, and (2) contains a link to firstclassherbtincture.com.

Collectively, the Spam Text Class and the Spoofed Number Sub-Class are referred to herein as "the Class."

51.     Excluded from the Class are: (1) Defendants and any entity in which Defendants have a controlling interest, and their legal representatives, officers, directors, assignees, and successors, and any co-conspirators; and (2) any judge or justice to whom this action is assigned, together with any relative of such judge or justice within the third degree of relationship, and the spouse of any such person.

52.     Upon information and belief, Representative Plaintiff alleges that these unsolicited texts sent by and/or on behalf of the Defendants have been transmitted to the cellular telephones of hundreds and potentially thousands of Class Members without their prior express consent

12

through an intentional and persistent course of knowingly illegal and deceptive conduct. Each

such transmission constitutes both a separate violation of the TCPA and a separate felony under

Arkansas law. Because the Class members are believed to number in the hundreds if not

thousands, individual joinder is impractical in satisfaction of Ark. R. Civ. P. 23(a)(1) as a matter

of both fact and common sense. The disposition of the claims of the Class members in a single

action clearly provide substantial benefits to all parties and to the Court and represents, and indeed

is the textbook example of, a case meriting and requiring certification pursuant to Ark. R. Civ. P.

23.

53.    Representative Plaintiff's claims are typical of the claims of the Class, as required

by Ark. R. Civ. P. 23(a)(3), in that Representative Plaintiff received an unsolicited text without his

prior express consent from Defendants to promote their commercial products and services during

the proposed Class Period.

54.    The factual and legal bases of Defendants' misconduct are common to all members

of the Class and represent a common cause of injury to Representative Plaintiff and the Class

members.

55.    Numerous questions of law and fact are common to the Class and predominate over

questions affecting only individual Class members, as required by Fed. R. Civ. P. 23(a)(2) and

23(b)(3). Such common questions including, but are not limited to:

i.    Whether Defendants' conduct constitutes a violation of the TCPA;

ii.    whether the equipment Defendants used to transmit the text messages in question
was an automatic telephone dialing system as contemplated by the TCPA;

iii.    whether Defendants obtained prior express consent to send the text messages in
question;

iv.    whether Class members are entitled to treble damages based on the willfulness of
Defendants' conduct; and

v.      whether the Defendants engaged in conduct that would constitute a felony under Arkansas law, for purposes of the corresponding civil remedies provided by Ark. Code Ann. § 16-118-107.

56.      Representative Plaintiff's claims are typical of the claims of the Class because they arise from the same course of conduct by Defendants and the relief sought is common.

57.      The Class is ascertainable, as the Class is defined using objective criteria easily identifiable based on existing telephone and other business records of the Defendants.

58.      Representative Plaintiff will fairly and adequately represent and protect the interests of the Class, as required by Fed. R. Civ. P. 23(a)(4).  Moreover, Representative Plaintiff has retained counsel with substantial experience in the prosecution of both nationwide and Arkansas specific consumer rights and individual privacy class actions.  Representative Plaintiff and his counsel are committed to the vigorous prosecution of this action on behalf of the Class and have the financial resources to do so.

**COUNT 1**
**NEGLIGENT VIOLATIONS OF THE TCPA, 47 USC §227**
**(ON BEHALF OF REPRESENTATIVE PLAINTIFFS AND THE SPAM TEXT CLASS)**

59.      Representative Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

60.      Defendants made unauthorized automated text message calls using an automatic telephone dialing system or prerecorded voice to the cellular telephone numbers of Representative Plaintiff and other members of the Class without the prior express written consent.

61.      These text message calls were made en masse using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendants were able to send thousands of text messages simultaneously to thousands of

consumers' cellphones without human intervention. These text messages are analogous to a prerecorded voice made without the prior express consent of Representative Plaintiff.

62.     The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

63.     As a result of Defendants' negligent violations of 47 U.S.C. § 227 et seq., Representative Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

64.     Representative Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**COUNT 2**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA, 47 USC §227**
**(ON BEHALF OF REPRESENTATIVE PLAINTIFF AND THE SPAM TEXT CLASS)**

65.     Representative Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

66.     Defendants made unauthorized automated text message calls using an automatic telephone dialing system or prerecorded voice to the cellular telephone numbers of Representative Plaintiff and other members of the Class without the prior express written consent.

67.     These text message calls were made en masse using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendants were able to send thousands of text messages simultaneously to thousands of consumers' cellphones without human intervention. These text messages are analogous to a prerecorded voice made without the prior express consent of Representative Plaintiff.

68.     The foregoing acts and omissions of Defendants constitute numerous and multiple

knowing and/or willful violations of the TCPA, including but not limited to each and every one of

the above-cited provisions of 47 U.S.C. §§ 227 et seq.

69.     As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 et

seq., Representative Plaintiff and the Class are entitled to treble damages, as provided by statute,

up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C.

§ 227(b)(3)(C).

70.     Representative Plaintiff and the Class are also entitled to and seek injunctive relief

prohibiting such conduct in the future.

## COUNT 3
## CLAIM PURSUANT TO THE ARKANSAS CIVIL ACTION BY CRIME VICTIMS ACT, ARK CODE ANN. § 16-118-107
## (ON BEHALF OF REPRESENTATIVE PLAINTIFF AND THE SPOOFED NUMBER SUB-CLASS)

71.     Representative Plaintiff hereby incorporates by reference the preceding paragraphs

of this Complaint fully as if set forth herein.

72.     Arkansas Code Annotated section 16–118–107(a)(1) provides that "any person

injured or damaged by reason of conduct of another person that would constitute a felony under

Arkansas law may file a civil action to recover damages based on the conduct."

73.     The conduct of Defendants as set forth herein constitute felonies under the strict

anti-spoofing strictures of Ark. Code Ann. § 5-63-205.

74.     As a direct and proximate result of Defendants' conduct the Representative Plaintiff

and the Class have suffered actual and statutory damages in excess of that required for Federal

Diversity and CAFA jurisdiction and are entitled to an award thereof as well as their attorney fees

and expenses pursuant to Ark. Code Ann. 16-18-107(a)(3).

16

## PRAYER FOR RELIEF

WHEREFORE, Representative Plaintiff respectfully prays for the following relief:

a.     An Order certifying the claims of the Representative Plaintiff and all other persons similarly situated as defined above, and appointing Representative Plaintiff and his counsel as Class representative and Class counsel, respectively;

b.     An award of actual and statutory damages in an amount in excess of that required for Federal Diversity and CAFA jurisdiction, including the trebling of such damages as provided for by the TCPA;

c.     An injunction requiring Defendants to cease all unsolicited text message and/or spoofing activities in the State of Arkansas and otherwise protecting the interests of the Class;

d.     An award of attorneys' fees and costs;

e.     Trial by jury as to all issues so triable; and

f.     Such other and further relief as is just and equitable under the circumstances.

DATED: October 15, 2020                    Respectfully submitted,

Joe P. Leniski, Jr.
BRANSTETTER, STRANCH & JENNINGS, PLLC
The Freedom Center
223 Rosa Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone:     (615) 254-8801
Email: joeyl@bsjfirm.com

James A. Streett (ABA# 2007092)
STREETT LAW FIRM, P.A.
107 West Main Street
Russellville, AR 72801
Telephone: (479) 968-2030

17

Facsimile: (479) 968-6253
Email: James@StreettLaw.com

*Attorneys for Representative Plaintiff
and Putative Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, October 15th, 2020, I served a copy of the foregoing

document on Counsel of Record via e-mail and U.S. Mail as follows:

Byron Jansen Walker
Rose Law Firm
120 East Fourth Street
Little Rock, AR 72201-2893
501-377-0351
Email: bwalker@roselawfirm.com

Joseph Christopher Hall
Rose Law Firm
Post Office Box 4800
Fayetteville, AR 72702
479-695-1330
Fax: 479-695-1332
Email: jhall@roselawfirm.com

Joe P. Leniski, Jr.

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

| | |
|---|---|
| KEVIN YASHTINSKY, on behalf of himself, and all others similarly situated, | ) ) ) Case No.: |
| Plaintiff, | ) ) |
| v. | ) **CLASS ACTION** ) |
| WALMART, INC., | ) Jury Trial Demanded ) |
| Defendant. | ) ) ) |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT

### INTRODUCTION

1.      Kevin Yashtinsky ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Walmart Inc. ("Defendant" or "Walmart"), in negligently, and/or willfully contacting Plaintiff through text messages calls on his cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.*, ("TCPA"), thereby invading his privacy.  Plaintiff alleges as follows upon personal knowledge as to his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

2.      The TCPA strictly forbids unsolicited text messages exactly like those alleged in this Complaint – intrusive text messages to private cellular phones, placed to numbers obtained without the prior express consent of the recipients.

3.      Defendant's violations cause Plaintiff and members of the Class of consumers (defined below) to experience actual harm, including aggravation, nuisance, and invasion of

privacy that necessarily accompanies the receipt of unsolicited and harassing text message calls, as well as the violation of their statutory rights.

4.　　　　Plaintiff and members of the Class suffered a concrete injury in fact, whether tangible or intangible, that is directly traceable to Defendant's conduct, and is likely to be redressed by a favorable decision in this action.

5.　　　　Plaintiff seeks an injunction stopping Defendant from sending unsolicited text messages, as well as an award of statutory damages under the TCPA, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

6.　　　　This Court has original jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 because they arise under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 751-53 (2012).

7.　　　　Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff seeks up to $1,500 in damages for each text message in violation of the TCPA, which, when aggregated among a proposed class number in the tens of thousands, exceeds the $5,000,000 threshold for federal court jurisdiction. Further, Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of the Defendant, providing jurisdiction under 28 U.S.C. § 1332(d)(2)(A). Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

8.　　　　The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant transacts significant amounts of business within this District and because the Defendant is headquartered in this District.

## PARTIES

9.　　　　Plaintiff Kevin Yashtinsky is a natural person and a citizen of the State of Mississippi. He is, and at all times mentioned herein was a "person" as defined by 47 U.S.C. § 153 (39).

2

10.     Defendant Walmart is a Delaware corporation and maintains its principal place of business at 708 SW 8th Street, Bentonville Arkansas 72716.  Walmart is a "person" as defined by 47 U.S.C. § 153 (39).

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
## (TCPA), 47 U.S.C. §§ 227 *et seq.*

11.     In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA),[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

12.     The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers."  Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]  As recognized by the Federal Communications Commission ("FCC") and the Courts, a text message is a call under the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009).

13.     According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA).  The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §§ 201 *et seq.*

[2] 47 U.S.C. § 227(b)(1)(A)(iii).

[3] *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014 (2003).

3

14.     One of the most bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for transmission and receipt of short text messages to and from wireless telephones.

15.     SMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. Because wireless telephones are carried on their owner's person, SMS text message are received virtually anywhere in the world.

16.     Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

17.     Moreover, the transmission of an unsolicited SMS text message to a cellular device is distracting and aggravating to the recipient; intrudes upon the recipient's seclusion; wastes a quantifiable amount of available data on the recipient's cellular device, thereby reducing its data storage capacity; temporarily reduces the available computing power and application processing speed on the recipient's device; diminishes the available battery power which shortens the battery life; and requires expending a quantifiable amount of energy (electricity) to recoup the battery power lost as a result of receiving such a message.

18.     As of October 16, 2013, express written consent is required to make any such telemarketing calls of text messages to the telephones of consumer. The express written consent must be signed and be sufficient to show the consumer received clear and conspicuous disclosure of the significance of providing consent and must further unambiguously agree to receive future phone calls.[4]

---

[4] *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 ¶ 33 (Feb. 15, 2012); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009).

4

19.     Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute.

20.     On July 10, 2015, the FCC released a Declaratory Ruling which clarified that a consumer who had previously provided "express consent" to receive automated calls or text messages has a right to revoke such consent. Under the Declaratory Ruling, consumers can revoke consent using any reasonable method, including orally or in writing, that clearly expresses his or her desire not to receive further calls.   However, even before the release of the FCC Order finding that consent to receive a text message could be revoked, the Mobile Marketing Association declared in October 2012 in its *U.S. Consumer Best Practices for Messaging* that "[a] subscriber must be able to stop participating and receiving messages from any program by sending STOP to the short code used for that program . . ." and ". . . if the subscriber sent STOP or STOP ALL to the short code, they are opted out of all programs they were enrolled in on that short code.   Moreover, the 2015 FCC Order regarding revocation of consent was upheld by the D.C. Circuit. *See ACA Int'l v. Fed. Commc'ns Comm'n*, No. 15-1211, 2018 WL 1352922, at *1 (D.C. Cir. Mar. 16, 2018) ("We uphold the Commission's approach to revocation of consent, under which a party may revoke her consent through any reasonable means clearly expressing a desire to receive no further messages from the caller.")

## FACTUAL ALLEGATIONS

21.     On April 10, 2019, Plaintiff Yashtinsky received a two-part text message call from Walmart to his wireless phone ending in the number 0599, for which Plaintiff provided no consent to call or text.

22.     Specifically, the text messages received by Plaintiff Yashtinsky stated as follows "WalmartRx – 1of 2 – REPLY NEEDED. TO begin receiving automated messages on your prescriptions, please reply YES. To decline reply STOP" "WalmartRX – 2of2 – Terms & Conditions at Walmart.com/alerterms Msg & data rates may apply. Reply HELP for help, STOP to unenroll"

23.     The incoming text message call from Defendant received by Plaintiff Yashtinsky emanate from the short code number 455-00, a number owned by Defendant.

24.     Plaintiff Yashtinsky is not a customer of a Walmart Pharmacy, has never received prescriptions from a Walmart Pharmacy and has never enrolled in Defendant's Prescription Messaging program.

25.     Plaintiff Yashtinsky's cellular number has been included on the Do Not Call Registry since March 31, 2013.

26.     This unsolicited text message call placed to Plaintiff Yashtinsky's wireless telephone was placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1) and by using "an artificial or prerecorded voice" system as prohibited by 47 U.S.C. § 227 (b)(1)(A), which had the capacity to produce or store numbers randomly or sequentially, and to dial such numbers, to place text message calls to Plaintiff Yashtinsky's cellular telephone.

27.     The telephone number that Defendant, or its agents, called was assigned to a cellular telephone service for which Plaintiff Yashtinsky incurred a charge for incoming calls pursuant to 47 U.S.C. § 227 (b)(1).

28.     These text message calls constitute calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

29.     Plaintiff Yashtinsky did not provide Defendant or its agents prior express consent to receive unsolicited text message calls pursuant to 47 U.S.C. § 227 (b)(1)(A).

30.     These text message calls by Defendant or its agents therefore violated 47 U.S.C. § 227(b)(1).

## CLASS ACTION ALLEGATIONS

31.     Plaintiff bring this action pursuant to Federal Rule of Civil Procedure 23(b)(3) on behalf of himself and a class of similarly situated individuals ("the Class") defined as follows:

> All persons in the United States who: (1) were sent a text message call placed by Defendant or its agents; (2) on his or her cellular telephone number; (3) through the use of any automatic telephone dialing system or artificial or pre-recorded voice system as set

6

forth in 47 U.S.C. § 227(b)(1)(A)(3); (4) without consent; (5) from four years prior to the filing of this Complaint through the filing of Final Approval.

32.     Defendant and its employees or agents are excluded from the Class.

33.     Plaintiff does not know the number of members in the Class, but believe the Class members are in the hundreds of thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

34.     Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class members via their cellular telephones by using unsolicited text message calls, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and invading the privacy of said Plaintiff and the Class members. Plaintiff and the Class members were damaged thereby.

35.     This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

36.     The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court. The Class can be identified through Defendant's records or Defendant's agents' records.

37.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

> a. Whether, between four year prior to the filing of this Complaint to the disposition of this case, Defendant or its agents placed text message calls without the recipients' prior express consent (other than a text message call

7

made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic telephone dialing system or an artificial or pre-recorded voice system, to any telephone number assigned to a cellular telephone service;

b. Whether the equipment Defendant, or its agents, used to make the text message calls in question was an automatic telephone dialing system as contemplated by the TCPA;

c. Whether Defendant, or its agents, text message calls can be considered an artificial or pre-recorded voice;

d. Whether Defendant, or its agents, systematically made text message calls to persons who did not previously provide Defendant with their prior express consent to receive such text message calls;

e. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

f. Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

38.      As a person that received at least one unsolicited text message call to his cell phone without his prior express written consent, Plaintiff is asserting claims that are typical of the Class.  Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interest antagonistic to any member of the Class.

39.      Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct.  Absent a class action, the Class will continue to face the potential for irreparable harm.  In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to individually seek legal redress for the wrongs complained of herein.

40.      Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

41.     A class action is a superior method for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured by prosecuting Plaintiff's claims as a class action.

42.     Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**
**NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. §§ 227 *ET SEQ.***

43.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

44.     Defendant made unauthorized automated text message calls using an automatic telephone dialing system or prerecorded voice to the cellular telephone numbers of Plaintiff and other members of the Class without the prior express written consent.

45.     These text message calls were made *en masse* using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. By using such

9

equipment, Defendant was able to send thousands of text messages simultaneously to thousands of consumers' cellphones without human intervention. These text messages are analogous to a prerecorded voice made without the prior express consent of Plaintiff.

46.     The foregoing acts and omissions of Defendant and its agents constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

47.     As a result of Defendant's, and Defendant's agents', negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

48.     Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. §§ 227 *ET SEQ.*

49.     Plaintiff incorporates by reference paragraphs 1-42 of this Complaint as though fully stated herein.

50.     Defendant made unauthorized automated text message calls using an automatic telephone dialing system or prerecorded voice to the cellular telephone numbers of Plaintiff and other members of the Class without the prior express written consent.

51.     These text message calls were made *en masse* using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendant was able to send thousands of text messages simultaneously to thousands of consumers' cellphones without human intervention. These text messages are analogous to a prerecorded voice made without the prior express consent of Plaintiff.

52.     The foregoing acts and omissions of Defendant constitutes numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227 *et seq.*

10

53.      As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

54.      Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### PRAYER FOR RELIEF

**Wherefore**, Plaintiff respectfully requests the Court to grant Plaintiff and the Class members the following relief against Defendant:

### FIRST CAUSE OF ACTION FOR NEGLIGENT VIOLATION OF THE TCPA, 47 U.S.C. §§ 227 *ET SEQ.*

55.      As a result of Defendant's, and Defendant's agents', negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

56.      Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

57.      Any other relief the Court may deem just and proper.

### SECOND CAUSE OF ACTION FOR KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA, 47 U.S.C. §§ 227 *ET SEQ.*

58.      As a result of Defendant's, and Defendant's agents', willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

59.      Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

60.      Any other relief the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: May 29, 2019

Respectfully submitted,


_/s/ James A. Streett_
**STREETT LAW FIRM, P.A.**
James A. Streett, ABA#2007092
James@StreettLaw.com
107 West Main Street
Russellville, AR 72801
Tel: (479) 968-2030
Fax: (479)968-6253

**BRANSTETTER, STRANCH & JENNINGS, PLLC**
Joe P. Leniski, Jr.(_Pro Hac Vice to be filed_)
jocyl@bsjfirm.com
The Freedom Center
223 Rosa Parks Avenue, Suite 200
Nashville, Tennessee 37203
Tel: (615) 254-8801
Fax: (615) 255-5419

**LAW OFFICES OF RONALD A. MARRON**
Ronald A. Marron (_Pro Hac Vice to be filed_)
ron@consumersadvocates.com
Alexis M. Wood (_Pro Hac Vice to be filed_)
alexis@consumersadvocates.com
Kas L. Gallucci (_Pro Hac Vice to be filed_)
kas@consumersadvocates.com
651 Arroyo Drive
San Diego, CA 92103
Tel: (619) 696-9006
Fax: (619) 564-6665

_Attorneys for Plaintiff and the Proposed Class_